UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>NETSPEND CORPORATION, a corporation,<br><br>    Defendant. | **Case No.** _____<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.     The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendant's acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), in connection with denying consumers' access to their funds deposited onto Defendant's prepaid debit cards.

1

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b) and 56(a)(2)(A).

## DEFENDANT

6.     Defendant NetSpend Corporation ("NetSpend") is a Delaware corporation with its principal place of business in Austin, Texas, and with corporate offices in Atlanta, Georgia.  NetSpend markets, sells, and services

prepaid debit cards and transacts or has transacted business in this district and throughout the United States.  NetSpend also manages cardholder accounts, processes card transactions, performs dispute and fraud management services, and handles customer service for cardholders.

7.    At material times during the period covered by this Complaint, Skylight Financial, Inc. ("Skylight") was a Delaware corporation with its principal place of business in Atlanta, Georgia.  Skylight was a direct or indirect corporate subsidiary, along with NetSpend, of NetSpend Holdings, Inc.,  and shared managers, marketing strategy, and operations with NetSpend.  Skylight marketed, sold, and serviced payroll and benefits prepaid debit cards and transacted business in this district and throughout the United States.  On or about June 2016, Skylight was merged into NetSpend.

## COMMERCE

8.    At all times material to this Complaint, NetSpend has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## NETSPEND'S BUSINESS ACTIVITIES

### Overview

9.      NetSpend sells prepaid debit cards, including general purpose reloadable cards or "GPR" cards (hereinafter, "NetSpend cards") nationwide. Consumers can load cash on their cards at retail locations and have their paychecks, government benefits, and tax refunds deposited directly onto NetSpend cards.  NetSpend cards operate on the Visa or MasterCard network, and consumers can use them as they would a Visa or MasterCard credit or debit card to make purchases, withdraw cash from ATMs, and pay bills, among other things.

10.      NetSpend targets "unbanked" and "underbanked" consumers, who do not have bank accounts or who use non-bank financial services such as payday loans or rent-to-own services, with the goal of providing "full financial services for the underbanked."  NetSpend's customers also include "low-income consumers" and those "facing financial uncertainty," and NetSpend markets specific products to groups such as "African Americans who are either unbanked or underbanked."  In addition, NetSpend markets NetSpend cards to Spanish-speaking consumers through Spanish-language ads.

11.     NetSpend tells consumers that NetSpend cards are ready to use immediately and will provide them with immediate access to their funds. In other ads, NetSpend tells consumers that approval is guaranteed. Further, NetSpend tells consumers that disputed transactions will be eligible for a provisional credit until resolved. Despite these claims, many consumers have been unable to use their cards immediately or access funds on their cards, including for prolonged periods of time—sometimes as much as weeks, or at all, meaning they never regain access to their own money. Despite NetSpend's claim of "guaranteed approval," NetSpend's approval is contingent upon consumers meeting unexpected requirements; ultimately, many consumers have not been approved, and have lost funds they have already placed on the cards. Consumers also have experienced delays in obtaining access to payroll deposits, government benefits, and other funds deposited to the cards. NetSpend also has failed to ensure consumers' access to funds during the dispute resolution process by furnishing provisional credits.

12.     Many consumers use NetSpend cards as their only source of funds. These consumers have experienced severe financial hardship when their funds have been unavailable, including evictions due to the inability to

5

pay rent, repossession of automobiles, late fees on bills, and the need to borrow money from relatives to pay for basic expenses. Consumers have spent hours or days making repeated calls to NetSpend's call centers to gain access to their funds and correct account errors, often without success.

13.   NetSpend continues to charge account maintenance or usage fees to consumers who are unable to use all or a portion of their funds due to unnecessarily lengthy account blocks or delays in receiving provisional credits for disputes over unauthorized charges. If consumers purchase new cards to gain access to funds on an account NetSpend has suspended, NetSpend charges them new card purchase fees and balance transfer fees. In numerous instances, when fed-up consumers have chosen to close their existing NetSpend card accounts, NetSpend has taken many days or weeks to return consumers' funds. And in many cases when consumers have been unable to activate new NetSpend cards that they have loaded with funds, NetSpend has depleted consumers' balances by charging account inactivity fees.

14.   Thousands of consumers have complained about NetSpend's business practices to government authorities, Better Business Bureaus, and NetSpend itself.

6

**NetSpend's Marketing Practices
and Representations to Consumers**

15.     NetSpend markets NetSpend cards to consumers nationwide on their websites and in retail stores.  NetSpend also contracts with thousands of employers and others to offer NetSpend cards onto which consumers can deposit their paychecks and other funds.

16.     NetSpend emphasizes in its marketing materials that consumers will be able to use NetSpend cards immediately and will have immediate access to funds deposited on the cards.  For example, in the typical and illustrative advertisement below, NetSpend represents that the cards  will be ready to use immediately:



NS0010517

17.    NetSpend also specifically claims that the NetSpend card will provide consumers with faster access to their paychecks, government benefits, or other funds if consumers deposit these funds directly onto a NetSpend card.  NetSpend's ads such as the one below claim that consumers will have "**immediate access to [their] funds.**"





18.     Other ads, such as the one below, specifically target consumers who receive government benefits, and emphasize that consumers will have "immediate access" and "***instant access to [their] money [with] no holds, no waiting.***"





19.    NetSpend makes similar claims in English and Spanish that NetSpend cards will be ready to use immediately and consumers will have immediate access to their funds.  For example, the typical and illustrative advertisement below prominently touts "**No waiting!**" and "**¡Sin esperas!**", as well as "**Use it today!\*\***" and "**¡Úsela hoy mismo!\*\***"  The ad further emphasizes that consumers can "**Use [their] card immediately**" and "**Use su tarjeta de inmediato**":





20.  In other advertisements such as NetSpend's homepage, NetSpend

claims that it "**guarantee[s] approval**":



21.  If a consumer were to notice and click on the footnote in the above-referenced ad, the following text would appear:



22.  NetSpend also makes representations about the speed with which it will address account errors and apply provisional credits for funds subject to such errors.  Specifically, NetSpend represents in its card terms and conditions that consumers have a right to dispute account errors and that NetSpend will attempt to complete an investigation of the errors within ten business days "and will correct any error promptly."  If NetSpend cannot complete this investigation within ten business days, NetSpend states that it "will credit [the consumer's] Card Account within ten (10) business days for the amount [the consumer] think[s] is in error" while continuing to investigate the errors, except that if the card account has been open for fewer

than thirty days, NetSpend will apply such a provisional credit within twenty business days.

23.     NetSpend makes similar claims of immediate access to funds for cards branded as "Skylight" payroll cards.  For example, the typical and illustrative ad reproduced below represents that Skylight cards are "**The fast, easy, and safe way to get paid,**" and that "**your money is secure and always available**" with a Skylight card.



**NetSpend Often Fails to Provide Consumers
with Promised Access to Funds**

24.     Contrary to its promises, however, NetSpend has denied many

consumers access to their money, sometimes for weeks.  Many consumers

have not been able to use their NetSpend cards immediately and have been

subjected to delays in accessing their funds when attempting to activate their

15

cards, lift account blocks imposed by NetSpend, or access their payroll, government benefit, or other direct deposits. NetSpend often is slow to resolve account errors, and fails to provide or significantly delays providing provisional credits for account errors. These delays in access to funds are especially harmful to consumers who have made the NetSpend card their primary means of financial management, leaving them without alternative means of accessing funds.

## NetSpend Denies or Delays Use of Cards and Access to Funds During the Activation Process

25.    NetSpend makes promises of immediate access and use but is unable to fulfill those promises in many instances. Consumers often face significant delays in attempting to activate NetSpend cards after loading funds on them, leaving consumers in financial limbo and without access to their money. Although consumers can often initially purchase and load funds on a NetSpend card at a retail location without trouble, for many consumers, the card is not ready to use immediately and access to the funds is not immediate. Indeed, NetSpend's claims are inconsistent with federal laws that apply to many payment card providers, requiring them to take steps before granting access to funds and approving cards. At a minimum, in all cases consumers must contact NetSpend and provide personal identification

information to activate the card and gain full access to their funds. NetSpend's cardholder identification program requires consumers to identify themselves by providing their name; address; birthdate; and social security number, if they have one.  In many cases, including for consumers without social security numbers, it requires consumers to also submit information such as a drivers' license, utility bill, or employer pay stub.  Many consumers do not expect these requirements, especially given that at retail locations, NetSpend cards often appear alongside gift cards, that are ready to use upon purchase, and given that they are simply trying to access their own funds that they loaded onto NetSpend cards.

26.     Additionally, in many cases, NetSpend has not activated consumers' accounts even though consumers have sent NetSpend the requested information.  Instead, NetSpend has claimed it did not receive the documentation and has required that it be re-sent, in some cases, over and over again.  In some other cases, consumers who have ordered NetSpend cards have not received them in the mail, and are not able to use them to access funds deposited into their accounts.  In many instances, NetSpend blocks all use of consumers' cards until they are activated, completely cutting off consumers' access to their funds.  In other instances, NetSpend blocks

17

certain features, such as ATM withdrawals, account-to-account transfers, or international transactions, severely restricting access to funds.

27.     Consumers experiencing these card activation issues have not received immediate access.  For example, in ███████████████████ cases from 2010 through April 2014, NetSpend failed to activate consumers' accounts for longer than a day, or to activate them at all, after consumers contacted NetSpend to attempt to activate their accounts.  In ██████ ███████████ cases, NetSpend failed to activate accounts for weeks after consumers requested activation.  Many such consumers found themselves without access to hundreds or thousands of dollars while trying to satisfy NetSpend's requirements to activate their NetSpend cards.

**NetSpend Denies or Delays Access to Funds by Blocking Accounts**

28.     In numerous instances, even after consumers initially gain access to their funds, NetSpend has interrupted access by imposing blocks on card accounts that persist even after consumers have contacted NetSpend to regain access to their funds.  In many cases, consumers have complained that they were unable to access any of their funds on the cards for substantial periods of time, up to weeks or even months after consumers contacted NetSpend to resolve the blocks.  From 2010 through April 2014, NetSpend blocked ████████████████████ accounts for longer than a day for common

types of account blocks.  In ████████ cases, such blocks have lasted for more than a month.

29.    Among other things, NetSpend's poor customer service has made it difficult for consumers to resolve these account blocks.  Numerous consumers have complained of extended hold times in excess of an hour when they call NetSpend's customer service representatives; difficulty in communicating with representatives because of poor training or proficiency in the consumer's language; and being made to hold repeatedly while being transferred from representative to representative, then having to repeat their entire story again to each new representative.  In many cases, consumers have had to call NetSpend's customer service representatives multiple times and send documentation repeatedly (such as identification) to resolve account blocks.

30.    In ████████ cases, NetSpend has failed to provide, or failed to timely provide, a provisional credit to consumers who submitted a notice of dispute in accordance with NetSpend's card terms and conditions. Consumers thus have been deprived of access to properly disputed funds, despite NetSpend's promise to provide access to such funds.

31.    In other cases, consumers have been unable to resolve account blocks despite repeatedly contacting NetSpend directly, and have only

19

regained access to their accounts after filing Better Business Bureau ("BBB") complaints.

32.    Consumers still face difficulties even when NetSpend finally agrees to restore access to funds.  If a consumer wishes to access the funds by obtaining a replacement NetSpend card or closing the account and receiving a check, NetSpend requires the consumer to wait 20 business days or bear the cost of purchasing a new NetSpend card at a retail store and then electronically transfer the funds to the new card.  Moreover, in numerous instances when consumers have attempted to obtain a replacement card or check, they have been delayed or lost; and consumers face the same difficulties as described above in working to track down the funds.  In some instances, consumers who purchase a new NetSpend card at a retail store also have experienced the problems described above in activating the card.

33.    While consumers' accounts are blocked, NetSpend often has continued to charge account usage fees ranging from $5 to $9.95 per month, even if consumers cannot use their cards.  In cases where consumers buy new NetSpend cards to transfer money from a blocked account, NetSpend often has not refunded the purchase price of the new card, which is typically $4.95. NetSpend also often has charged consumers an additional $4.95 fee to transfer money into the new account.

## NetSpend Delays Access to
## Direct Deposits

34.     In many instances, NetSpend has not provided immediate access to payroll, government benefits, and other direct deposits, resulting in consumers not having access to these deposited funds.  Indeed, from 2010 to April 2014, NetSpend blocked access to direct deposits in ███████ instances for longer than a day, and in ██████████████ instances for at least fifteen days.  Days or weeks of delayed access to funds can cause significant financial hardship to consumers, including overdue bills and other injury, especially if consumers have used NetSpend cards as their primary source of funds.  NetSpend's delays are often exacerbated by its slow resolution process.  In numerous instances, consumers have called NetSpend multiple times over a period of weeks or months to prod it to locate missing deposits.  In some cases, NetSpend has only located the funds after consumers submitted Better Business Bureau complaints.  For consumers receiving direct deposit of their paychecks and government benefits, these funds may be their only source of income.

35.     These delays occur despite NetSpend's promise that consumers who use their cards will experience "no waiting."

## NetSpend's Approval Is Contingent, Not Guaranteed

36.  Despite NetSpend's claim of "Guaranteed Approval," NetSpend's approval is actually contingent upon consumers meeting unexpected requirements.  As discussed above, NetSpend's cardholder identification program requires consumers to provide their social security number, if they have one, and other information; in many cases, it requires consumers to also submit information such as a drivers' license, utility bill, or employer pay stub.  Additionally, in many cases, NetSpend has not approved consumers' accounts, including when consumers have sent NetSpend the requested information, and the consumers have never gotten back the money they placed on NetSpend cards.

## NetSpend Often Fails to Provide Provisional Credits for Account Errors As Promised

37.   NetSpend claims that while investigating account errors asserted by consumers it will provide provisional credits within ten business days if the card account has been open thirty days or longer, and within twenty business days if the card has been open less than thirty days.

38.   NetSpend, however, often fails to provide timely provisional credits to consumers while investigating account errors.  These account errors include, among other things, disputed or unauthorized transactions,

and misplaced direct deposits of payroll, government benefits, and other funds. As set forth above, in ███████████████ cases, NetSpend has failed to timely provide provisional credits as promised in the card terms and conditions, even when consumers have properly disputed the underlying transaction.

39.   In numerous other instances, NetSpend has failed to apply provisional credits even after it has informed consumers that the credits would be applied. In many such cases, NetSpend has sent consumers a letter or email claiming to have credited their account, although no such credit, or only a partial credit, has been applied. In some cases, even if NetSpend has issued provisional credits, it has issued the credits to blocked accounts. Consumers often must repeatedly contact NetSpend to obtain access to the credited funds.

## VIOLATIONS OF THE FTC ACT

40.   Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

41.   Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

23

## Count I

## Deceptive Representations that NetSpend Cards Are Ready to Use Immediately and Consumers Will Have Immediate Access to Funds

42.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of NetSpend cards, NetSpend has represented, directly or indirectly, expressly or by implication, that NetSpend cards will be ready to use immediately and will provide consumers with immediate, instant, same-day access to their funds.

43.     In truth and in fact, in numerous instances, NetSpend cards have not been ready to use immediately and have not provided consumers with immediate, instant, same-day access to their funds.

44.     Therefore, the making of the representations set forth in Paragraph 42 of this Complaint constitutes a deceptive act or practice, in or affecting commerce in violation of  Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count II

## Deceptive Representations of Guaranteed Approval

45.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of NetSpend cards, NetSpend

has represented, directly or indirectly, expressly or by implication, that consumers are "guaranteed approval" for a NetSpend card.

46.    In truth and in fact, consumers are not guaranteed approval for a NetSpend card.

47.    Therefore, the making of the representations set forth in Paragraph 45 of this Complaint constitutes a deceptive act or practice, in or affecting commerce in violation of  Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count III

## Deceptive Representations that NetSpend Will Provide Provisional Credits for Account Errors

48.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of NetSpend cards, NetSpend has represented, directly or indirectly, expressly or by implication, that it will provide provisional credits to consumers' NetSpend accounts for the full amount of account errors claimed by consumers within a specific time period.

49.    In truth and in fact, in numerous instances, NetSpend has not provided provisional credits to consumers' NetSpend accounts for the full amount of account errors claimed by consumers within the promised time period, or at all.

50.     Therefore, the making of the representations as set forth in Paragraph 48 of this Complaint constitutes a deceptive act or practice, in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

51.     Consumers have suffered and will continue to suffer substantial injury as a result of NetSpend's violations of the FTC Act.  In addition, NetSpend has been unjustly enriched as a result of its unlawful acts or practices.  Absent injunctive relief by this Court, NetSpend is likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

52.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

26

# PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

A.      Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, a temporary and preliminary injunction, an evidence preservation order, and expedited discovery;

B.      Enter a permanent injunction to prevent future violations of the FTC Act by NetSpend;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from NetSpend's violations of the FTC Act, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.      Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

David C. Shonka
Acting General Counsel

Dated: __11/10/2016__                         _Robin L. Rock_

Mark L. Glassman
Adam M. Wesolowski
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mailstop: CC-10232
Washington, DC 20580
Email: mglassman@ftc.gov
awesolowski@ftc.gov
Phone: (202) 326-2826 (Glassman)
(202) 326-3068 (Wesolowski)
Fax: (202) 326-3768

Robin L. Rock (Bar No. 629532)
Federal Trade Commission
Southeast Region
225 Peachtree Street, N.E., Suite 1500
Atlanta, GA 30303
Email: rrock@ftc.gov
Phone: (404) 656-1368
Fax: (404) 656-1379

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

28